**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| GREAT AMERICAN ASSURANCE COMPANY <br> 301 E. Fourth Street <br> Cincinnati, Ohio  45202 <br><br>        Plaintiff, <br> v. <br><br> KANAKUK HERITAGE, INC., <br> f/k/a KANAKUK KAMPS, INC., <br> a Missouri corporation <br> <u>Serve</u>:  Joe T. White, President <br>    1353 Lakeshore Drive <br>    Branson, MO  65616 <br><br> K-KAMPS, INC., a Missouri <br> Corporation <br> <u>Serve</u>:  Joe T. White <br>    1353 Lakeshore Drive <br>    Branson, MO  65616 <br><br> KANAKUK MINISTRIES, a Missouri <br> Not for Profit Corporation <br> <u>Serve</u>:  Joe T. White <br>    1353 Lakeshore Drive <br>    Branson, MO  65616 <br><br> And <br><br> JOHN DOE, J.G., a California citizen <br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br><br><br> Case No:_____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Great American Assurance Company, by and through counsel, and for its

Complaint for Declaratory Judgment against defendants Kanakuk Heritage, Inc. f/k/a Kanakuk

Kamps, Inc., K-Kamps, Inc., Kanakuk Ministries and John Doe, J.G. states the following:

1. Plaintiff Great American Assurance Company ("Great American") is an Ohio corporation with its principle place of business in Cincinnati, Ohio.

2. Defendant Kanakuk Heritage, Inc. f/k/a Kanakuk Kamps, Inc. ("Kanakuk") is a Missouri corporation with its principle place of business in Branson, Taney County, Missouri.

3. Defendant K-Kamps, Inc. ("K-Kamps") is a terminated Missouri corporation that had a principle place of business in Branson, Taney County, Missouri.

4. Defendant Kanakuk Ministries ("Ministries") is a Missouri not for profit corporation with a principle place of business in Branson, Taney County, Missouri.

5. Defendant John Doe, J.G. is a resident and citizen of California.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this court pursuant to 28 U.S.C. §1332 because Great American, Kanakuk, K-Kamps, Ministries and John Doe are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper in this court pursuant to 28 U.S.C. §1391(a)(3) because one or more defendants are subject to personal jurisdiction in this district at the time the action is commenced and there is no other district in which the action may otherwise be brought.

## THE GREAT AMERICAN POLICY

8. Great American issued an insurance policy to Kanakuk and K-Kamps. The policy included multiple parts including a coverage part for Commercial General Liability Coverage (the "CGL Part").

9. Great American issued a CGL Part to named insured Kanakuk Kamps, Inc. d/b/a K-Kamps, Inc. for the policy period April 1, 2002 to April 1, 2003 bearing Policy No. PAC

0000563064601 (the "Policy"). A copy of the Policy is attached as Exhibit A. (The CGL Coverage Part appears at pages G000110 – G000151).

10. The CGL Part identifies the insured as Kanakuk Kamps, Inc. d/b/a K Kamps, Inc. located at 1353 Lakeshore Drive, Branson, MO 65616-9727.

11. The CGL Part contains a per occurrence limit of $1,000,000 and a general aggregate limit of liability of $2,000,000 for the respective policy period.

12. The business description was listed as "Camp."

13. The insured locations are also listed in form GAC 3330CG (01/02) as follows:

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:**

| | |
|---|---|
| 0001 | 1353-1355 LAKESHORE DRIVE, BRANSON, MO 65616 |
| 0002 | 20 K2 DRIVE, LAMPE MO 65681 |
| 0003 | 793 K WEST DRIVE, LAMPE, MO 65681 |
| 0004 | 967 LAKESHORE DRIVE, BRANSON, MO 65616 |
| 0005 | 364 K7 DRIVE, LAMPE, MO 65681 |
| 0006 | 1380 ETERNITY LANE, SHELL KNOB, MO 65746 |
| 0007 | 9658 CR 501, BAYFIELD, CO 81122 |
| 0008 | 863 LAKESHORE DRIVE, BRANSON, MO 65616 |
| 0009 | 844 LAKESHORE DRIVE, BRANSON, MO 65616 |
| 0010 | SECTION 27 RANGE 26W, TWNS 21, EUREKA SPRINGS, AR 72631 |
| 0011 | BULL CREEK, ORCHARD LANE, ROCKAWAY BEACH, MO 65740 |
| 0012 | 340 LAKEVIEW STREET, HOLLISTER, MO 65672 |
| 0013 | NORTHFORK, ROUTE 1, BOX 4560, DORA, MO 65637 |
| 0014 | BUFFALO NATIONAL RIVER, HARRISON, AR 72601 |
| 0015 | TABLEROCK LAKE, LAMPE, MO 65681 |

14. The CGL Part also contains a Liability Schedule and Premium Recap wherein each location is listed. All fifteen scheduled locations contain the following description:

> Camps – Not for Profit
> CAMP DAYS: PER DATES ON FILE WITH COMPANY

15. The insuring agreement of the CGL Part states the following:

3

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
        **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and
        **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
    b.  This insurance applies to "bodily injury" and "property damage" only if:
        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
        **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
        **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an occurrence or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or

4

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of service or death resulting at any time from the "bodily injury".

16. The above cited insuring agreement is modified by exclusions in the CGL Part.

The following exclusion states:

 **2.** **Exclusions**
  This insurance does not apply to:

  **a.** **Expected or Intended Injury**
  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

***

5

Case 6:12-cv-03236-RED   Document 1   Filed 05/03/12   Page 5 of 19

17. The CGL Part also contains certain coverage under Part B for Personal and Advertising Injury. The CGL Part defines "personal and advertising injury" for purposes of Part B as

> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>     **a.** False arrest, detention or imprisonment;
>     **b.** Malicious prosecution;
>     **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>     **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>     **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
>     **f.** The use of another's advertising idea in your "advertisement"; or
>     **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

18. The CGL Part policy also provides the following:

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

> **1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>     **a.** All expenses we incur.
>     **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
>     **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
>     **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

6

      **e.**      All costs taxed against the insured in the "suit".
      **f.**      Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
      **g.**      All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

19.     The CGL Part also contains the following language:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

    **2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
      **a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
          **(1)**    How, when and where the "occurrence" or offense took place;
          **(2)**    The names and addresses of any injured persons and witnesses; and
          **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or defense.
      **b.**      If a claim is made or "suit" is brought against any insured, you must:
          **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and
          **(2)**    Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

      **c.**      You and any other involved insured must:
          **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

> > **(2)** Authorize us to obtain records and other information;
> > **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
> > **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
> > **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for the first aid, without our consent.

20. The following Endorsements which change, limit and/or modify the coverages provided under the CGL Part:

**GAC 33 32 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**COMMERCIAL GENERAL LIABILITY BROADENED COVERAGE**

This endorsement modifies coverage provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following replaces **SECTION 1 – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2 Exclusions, a.:**
   **a.** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

                                 \*\*\*

**D.** The following replaces **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**, 1. **b**. and **d**:
   **b.** Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

8

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

***

**G.** The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** 2. Duties In The Event of Occurrence, Offense, Claim Or Suit:

**e.** Knowledge of the "occurrence", offense, claim or "suit" by the agent, servant, or "employee" of an insured shall not in itself constitute your knowledge unless one of your officers, manager or partners has received notice of the "occurrence", offense, claim or "suit".

**f.** Failure by the agent, servant or "employee" of an insured (other than an officer, manager or partner) to notify us of an "occurrence" shall not constitute a failure to comply with items a. and b. of this condition.

***

**I.** The following replaces **SECTION V – DEFINITIONS, 3. and 14**:

**3**. "Bodily Injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease.

**14**. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
  **a.** False arrest, detention or imprisonment;
  **b.** Malicious prosecution or abuse of process;
  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
  **d.** Any publication of material including, but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services;
  **e.** Any publication of material, including but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

21. The CGL contains the following endorsement:

PAC0000563064601

**SEXUAL ABUSE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. It is agreed that this policy affords <u>NO COVERAGE</u> with respect to any claim, suit or cause of action which arises from or is in any way related to:
   i. The actual, alleged or threatened sexual abuse, sexual molestation, sexual exploitation, or sexual injury committed by:
   1. any insureds;
   2. any employee or servant of any insured;
   3. any other person performing services for or on behalf of any insured:
      ii. Employment practices concerning a person who commits any of the acts cited in paragraph A. above, including but not limited to hiring, reference checks, background investigation, improper or inadequate supervision or failure to suspend or terminate;
      iii. Failure to report an incident of sexual abuse, sexual molestation, sexual exploitation, or sexual injury to the proper authorities or the withholding of pertinent information concerning same from such authorities.

   This exclusion shall apply regardless of the legal form any claim may take by way of negligence, breach of contract or assault.

2. The above exclusion shall <u>NOT</u> apply if the box below has an "X" in it. Coverage provided is subject to those provisions set forth in paragraphs (2A) through (2E) of this endorsement.

  [ X ] An "X" inserted in this box indicates that provisions of paragraphs 2A through 2E apply.

 A. If coverage provided by this endorsement applies, <u>we will pay</u> for Personal Injury, arising out of the insured's business description as shown in the Declarations Page, to any person for sexual abuse, sexual molestation, sexual exploitation or sexual injury. It is further agreed that for the purpose of coverage provided by this endorsement:

 B. Personal Injury (as respects this endorsement) means bodily injury, mental injury, mental anguish, humiliation, shock, sickness, disease, disability, or sexual dysfunction.

10

C. The most we will pay for damages is limited to:

$1,000,000   Per person sexually abused, sexually molested, sexually exploited or sexually injured, regardless of the number of incidents involving that person.

$2,000,000   Aggregate per policy period. The Aggregate Limit is the most we will pay for all damages regardless of the number of (a) insureds, (b) claims made or suits brought or (c) persons or organizations making claims or bringing suits.

The Aggregate Limit stated above shall be a part of and not in addition to the General Aggregate Limit as stated in the policy declarations.

The Limits of Insurance stated herein shall not be cumulative with any Limits of Insurance stated elsewhere in the policy for "Personal Injury" or "Bodily Injury."

D. Multiple incidents of sexual abuse, sexual molestation, sexual exploitation or sexual injury to one person, whether consisting of one or any combination of incidents shall be deemed to be one occurrence and shall be subject to the coverage and limits in effect at the time of the first incident even if some of the incidents take place after expiration of this policy.

E. Section II – WHO IS AN INSURED shall not include any person that personally participated in committing any sexual abuse, sexual molestation, sexual exploitation or sexual injury or who failed to take action to prevent recurrence after having personal knowledge of any sexual abuse, sexual molestation, sexual exploitation or sexual injury.

## FACTUAL BACKGROUND

22. On or about January 31, 2011, John Doe, J.G. filed a petition against Kanakuk, K-Kamps, and Ministries in the Circuit Court of Taney County, Missouri, Case No. 11AFCC089 styled John Doe, JG, plaintiff v. K-Kamp, Inc. d/b/a Kanakuk Kamps, Inc., et al. (the "Underlying Lawsuit"). A true and accurate copy of the petition is attached hereto as Exhibit "B".

23. In the Petition "John Doe J.G." alleges K-Kamps, Inc. f/k/a Kanakuk Kamps, Inc., and Kanakuk Ministries (collectively "Kanakuk") held itself out as a non denominational

11

Christian based camp organization. It is alleged Kanakuk employed Peter Daniel Newman ("Newman") as a camp director and senior representative of camps for school aged children. It is alleged Kanakuk used Newman to market Kanakuk.

24. The Underlying Lawsuit alleges Newman convinced boys to engage in masturbation and/or sodomy with him. It is alleged Newman's sexual misconduct was reported to Kanakuk in 1999. It is alleged Kanakuk received information of Newman's sexual misconduct with campers yet Newman was allowed to continue with his work for Kanakuk.

25. The Underlying Lawsuit further alleges Newman asked for and received lodging in homes of campers through his role as a Christian role model and "rainmaker" for Kanakuk. It is alleged that in February 2003 Newman sexually abused John Doe, who was 12 years old, by convincing John Doe to engage in masturbation with him. It is alleged Newman used his access to Kanakuk camp facilities to lure victims, including John Doe, to the camps during the off-season. It is alleged that in February 2003 Newman sexually abused John Doe at Kanakuk's facility known as "K-Kountry" in an area in the gym.

26. The Underlying Lawsuit alleges additional occasions of sexual abuse by Newman involving John Doe occurred on Kanakuk property during the summer camp season of 2003, in Memphis, Tennessee during 2004, and in Oklahoma during the fall season of 2005.

27. The Underlying Lawsuit alleges that John Doe has been damaged as a result of Newman's sexual abuse. The damages are alleged to consist of psychological confusion, spiritual damage, severe depression and ongoing anxiety, gender identity confusion, unspecified confusion and worry, issues relating to trust of other people, especially males, and other unspecified damages. John Doe seeks actual and punitive damages in amounts that are fair and reasonable.

28. The Underlying Lawsuit pleads seven causes of action as follows:

First Claim: Negligent Supervision of a Minor

Second Claim: Negligent or Wanton Hiring and Retention

Third Claim: Breach of Fiduciary Duty

Fourth Claim: Intentional Infliction of Emotional Distress

Fifth Claim: Negligent Infliction of Emotional Distress

Sixth Claim: Fraud

Seventh Claim: Breach of Duty in Loco Parentis

29. Upon information and belief, six sexual incidents are alleged to have occurred between Newman and John Doe. Upon information and belief, the first incident occurred on February 2, 2003. The incident occurred in Little Rock, Arkansas at John Doe's home. Upon information and belief, Newman was in Little Rock with his girlfriend/fiancé to attend a Kenny Chesney concert. (Hereinafter described as the "First Incident").

30. Upon information and belief, the second incident occurred the day following the First Incident in Little Rock. Upon information and belief, the second incident occurred in Branson, Missouri at the K-Kamp location in the gym. Upon information and belief, Kanakuk was not holding a camp session at the time. (Hereinafter described as the "Second Incident").

31. Upon information and belief, the third incident occurred in the spring of 2004 in Memphis, Tennessee. Upon information and belief, Kanakuk was not holding a camp session at the time. (Hereinafter described as the "Third Incident").

32. Upon information and belief, the fourth incident occurred during the summer of 2004 at the K West location in Missouri. Upon information and belief, Kanakuk was holding a

13

camp session at the time and John Doe was an enrolled camper. (Hereinafter described as the "Fourth Incident").

33. Upon information and belief, the fifth incident occurred in the fall of 2004 in Oklahoma. Upon information and belief, Kanakuk was not holding a camp session at the time. (Hereinafter described as the "Fifth Incident").

34. Upon information and belief, the sixth and final incident occurred sometime on the telephone after the fall, 2004 while John Doe was at his home in Little Rock, Arkansas. (Hereinafter described as the "Sixth Incident").

35. Kanakuk, K-Kamps and Ministries filed their notice of occurrence/claim with Great American.

36. Great American has provided a defense to Kanakuk, K-Kamps and Ministries in the Underlying Lawsuit under reservation of its rights to deny indemnity for any judgments.

## COUNT I: Acts Outside Coverage Period

37. Great American repeats and realleges the allegations of paragraphs 1 through 36 herein by reference.

38. The CGL Part provides coverage for a policy period of April 1, 2002 through April 1, 2003.

39. Upon information and belief, the Third Incident, Fourth Incident, Fifth Incident and Sixth Incident of sexual misconduct occurred after April 1, 2003.

40. Any claims of damage by John Doe, J.G. for the Third Incident, Fourth Incident, Fifth Incident and Sixth Incident of sexual misconduct after April 1, 2003 do not constitute bodily injury or personal injury occurring during the policy period and are therefore not covered damage or damages under the CGL Part.

14

41. Because the claims alleged in the Underlying Lawsuit are not covered under the CGL Part or any of its endorsements, there is no duty for Great American to provide a defense to or indemnify Kanakuk Heritage, Inc. f/k/a Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries under the CGL Part, or any of its endorsements, nor is there any obligation to John Doe, J.G.

## COUNT II: Acts Not Arising Out of Camp Business

42. Great American repeats and realleges the allegations of paragraphs 1 through 41 herein by reference.

43. The CGL Part, through the Sexual Abuse Endorsement (the "Endorsement"), provides coverage for "Personal Injury", as defined by the Endorsement, for acts arising out of the insured's business description as shown in the Declarations Page.

44. The CGL Part, through the Endorsement, does not provide coverage for "Personal Injury", as defined by the Endorsement, for acts that do not arise out of the insured's business description as shown in the Declarations Page.

45. The Business Description shown on the Common Policy – Declarations page is "Camp."

46. Upon information and belief, the First Incident and Second Incident of sexual misconduct in February, 2003, as well as the Third Incident, Fifth Incident and Sixth Incident after April 1, 2003, all occurred when none of the insured locations were open and operating as a Camp.

47. Upon information and belief, the First Incident of sexual misconduct occurred on or about February 2, 2003 when Newman participated in a non camp related personal activity consisting of attendance at a Kenny Chesney concert in Little Rock, Arkansas.

15

48. Upon information and belief, the Second Incident of sexual misconduct occurred on or about February 3, 2003 when Newman continued to participate in a non camp related personal activity associated with his attendance at a Kenny Chesney concert.

49. Further, upon information and belief, the Third Incident, Fifth Incident and Sixth Incident of sexual misconduct occurred after April 1, 2003 during periods of personal activity by Newman not associated with any camp activity when camp was not in session.

50. Upon information and belief, Newman's acts of sexual misconduct in February, 2003 in the First Incident and Second Incident, as well as the Third Incident, Fifth Incident and Sixth Incident after April 1, 2003, do not arise out of the insured's business description as a Camp and are not covered by the CGL Part and the Endorsement.

51. Because the claims alleged in the Underlying Lawsuit are not covered under the CGL Part and the Endorsement, there is no duty for Great American to provide a defense to or indemnify Kanakuk Heritage, Inc. f/k/a Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries under the CGL Part or the Endorsement nor is there any obligation to John Doe, J.G.

**COUNT III: Acts Not Within Course and Scope of Employment as a Camp**

52. Great American repeats and realleges the allegations of paragraphs 1 through 51 herein by reference.

53. The CGL Part, through the Endorsement, provides coverage for "Personal Injury," as defined by the Endorsement, for acts arising out of the insured's business description as shown in the Declarations Page.

54. The CGL Part, through the Endorsement, does not provide coverage for "Personal Injury," as defined by the Endorsement, for acts that do not arise out of the insured's business description as shown in the Declarations page.

16

55. The Business Description shown on the Common Policy – Declarations page is "Camp."

56. Upon information and belief, Newman's acts of sexual misconduct during the First Incident and Second Incident in February, 2003, as well as the Third Incident, Fifth Incident and Sixth Incident after April 1, 2003, all occurred when none of the insured locations were open and operating as a Camp.

57. Upon information and belief, the First Incident of sexual misconduct occurred on or about February 2, 2003 when Newman participated in a non camp related personal activity consisting of attendance at a Kenny Chesney concert in Little Rock, Arkansas.

58. Upon information and belief, the Second Incident of sexual misconduct occurred on or about February 3, 2003 when Newman continued to participate in a non camp related personal activity associated with his attendance at a Kenny Chesney concert.

59. Upon information and belief, the Third Incident, Fifth Incident and Sixth Incident of sexual misconduct occurred after April 1, 2003 during periods of personal activity by Newman not associated with any camp activity when camp was not in session.

60. Upon information and belief, Newman's acts of sexual misconduct in February, 2003 in the First Incident and Second Incident, as well as the Third Incident, Fifth Incident and Sixth Incident after April 1, 2003 were acts not within the course and scope of Newman's employment at the camp and are not covered by the CGL Part and the Endorsement.

61. Because the claims alleged in the Underlying Lawsuit are not covered under the CGL Part and the Endorsement, there is no duty for Great American to provide a defense to or indemnify Kanakuk Heritage, Inc. f/k/a/ Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries under the CGL Part or the Endorsement nor is there any obligation to John Doe, J.G.

## COUNT IV: Punitive Damages Not Covered

62. Great American repeats and realleges the allegations of paragraphs 1 through 61 herein by reference.

63. The Underlying Lawsuit seeks damages labeled as "punitive damages" to punish each defendant and to deter future misconduct for the alleged sexual misconduct.

64. The Endorsement provides coverage for "Personal Injury" defined as "bodily injury, mental injury, mental anguish, humiliation, shock, sickness, disease, disability, or sexual dysfunction."

65. The Endorsement does not provide coverage for punitive damages awarded as punishment and/or to deter future misconduct.

66. Because the claims for punitive damages alleged in the Underlying Lawsuit are not covered under the CGL Part and the Endorsement, there is no duty for Great American to provide a defense to or indemnify Kanakuk Heritage, Inc. f/k/a Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries under the CGL Part or the Endorsement nor is there any obligation to John Doe, J.G.

## RELIEF REQUESTED IN ALL COUNTS

WHEREFORE, Plaintiff Great American Assurance Company requests that this Court enter judgment:

    a. declaring the rights and obligations of Great American and the defendants with respect to the Underlying Lawsuit and any judgment thereon;

    b. declaring that Great American has no obligation under any of the policies to defend or indemnify Kanakuk Heritage, Inc., f/k/a Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries in connection with the

Underlying Lawsuit or any judgments that may be rendered in the Underlying Lawsuit including any costs or fees associated with appeal of that action or any subsequent judicial or administrative process arising from the Underlying lawsuit;

c.  declaring that Great American has, therefore, no obligations to Kanakuk Heritage, Inc., f/k/a Kanakuk Kamps, Inc., K-Kamps, Inc. and/or Kanakuk Ministries under any provision of the policy;

d.  declaring that Great American has no liability to any other defendant in this action in connection with the Underlying Lawsuit, including any judgment thereon;

e.  awarding Great American's costs and disbursements incurred in connection with this action; and

f.  granting such other relief as this Court deems just and proper.

Respectfully submitted,

LAW OFFICES OF VINCENT F. O'FLAHERTY, ATTORNEY, LLC

By  s/Vincent F. O'Flaherty
Vincent F. O'Flaherty    MO Bar No: 34693
2 Emanuel Cleaver II Blvd Suite 445
Kansas City, MO  64112
(816) 931-4800 Telephone
(816) 756-2168 Fax
voflaherty@voflaw.com
ATTORNEYS FOR PLAINTIFF GREAT AMERICAN ASSURANCE COMPANY